# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

DIANE PFISTER,

        Plaintiff(s),

v.

SELLING SOURCE, LLC, et al.,

        Defendant(s).

2:12-CV-408 JCM (NJK)

**ORDER**

        Presently before the court is defendant LeadRev Inc.'s ("LeadRev") motion to transfer or motion to dismiss filed pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3), as well as 28 U.S.C. § 1404(a). (Doc. # 26).[1] Plaintiff Diane Pfister filed a response (doc. # 32) and LeadRev filed a reply (doc. # 34).

**I.    Background Facts**

        This case is brought by plaintiff Diane Pfister as a purported class action under the Telephone Consumer Protection Act based on her allegations that defendants Selling Source, LLC ("Selling Source") and LeadRev[2] engaged in a practice of making unsolicited text message calls to cellular

---

[1] The Federal Rules of Civil Procedure are hereinafter referred to as the "Rules".

[2] The complaint names "LeadRev, Inc." as a defendant, but LeadRev, Inc. was merged into LeadRev Holding, LLC in 2008. (*See* doc. # 26, 2, n.1)

**James C. Mahan**
**U.S. District Judge**

telephones. (Doc. # 1, ¶ 1).[3] Plaintiff is a resident of Ohio. (*Id.* at ¶ 6). She alleges that she received a spam text message from the telephone number (240) 529-8117. (*See id.* at ¶¶ 17-18). Plaintiff does not allege that she was in Nevada when she received this text message or that it was sent from Nevada.

LeadRev is a Delaware corporation with its principal place of business in Florida. (*See* doc. # 27, ¶¶ 2, 4). LeadRev has one office, which is located in Florida. (*Id.* at ¶ 4). LeadRev has no office or operation in Nevada. (*Id.* at ¶ 9). LedRev's management and employees are all located in Florida. (*Id.* at ¶¶ 4, 6). LeadRev is not registered to do business in Nevada. (*Id.* at ¶ 9). LeadRev has never paid taxes in Nevada, employed agents in Nevada, sued anyone in Nevada, or maintained a post office box in Nevada. (*Id.*).

Defendant Selling Source is a Delaware corporation with its principal place of business in Nevada. (Doc. # 1, ¶ 7). Selling Source became the sole owner of LeadRev in 2008. (Doc. # 27, ¶ 2). During the acquisition process, LeadRev employees and/or representatives traveled to Nevada for meetings with Selling Source. (*See id.* at ¶ 8). LeadRev and Selling Source do not share offices, employees, bank accounts, or any other assets or operations. (*Id.* at ¶ 5).

LeadRev's revenue, accounts receivable, goodwill, and all other assets are solely owned and controlled by LeadRev. (*Id.*). Selling Source provides some direction to LeadRev regarding "overall business results and strategy." (*See id.* at ¶ 7). LeadRev's Executive Director of Operations has also flown to Nevada to discuss his annual compensation with Selling Source executives or employees. (*See id.*). He did not discuss text messaging with Selling Source executives or employees during those trips. (*See id.*). LeadRev employees and representatives visited Selling Source's office four times during 2009 and 2010. (*Id.* at ¶ 8). Since January 2011, no other LeadRev employee has traveled to Nevada for business other than to attend the annual affiliate summit for educational and networking purposes. (*Id.* at ¶ 7; doc. # 29 ¶ 2).

---

[3] The court accepts as true any uncontroverted allegations in the complaint and resolves any conflicts between the facts contained in the parties' evidence in the plaintiff's favor. *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001).

LeadRev is an online lead generation company. (Doc. # 27, ¶ 10). It generates leads through online submission forms filled out by potential leads and provides those leads to certain businesses and entities for marketing purposes. (*Id.*). LeadRev operates and maintains the website LeadRev.com. (*Id.*). LeadRev's website is hosted by a Nevada-based server, Red Rock Colocation Solutions, LLC. (*See* doc. # 33, Exhs. 2-5; *see also* doc. # 1, ¶¶ 35-43).

LeadRev uses agent marketers, which it refers to as publishers, to drive traffic to its website. (*See* doc. # 32, 3; *see also* doc. # 1, ¶¶ 29, 44). Those interested in becoming publishers may obtain an agreement from LeadRev's website ("publisher agreement"). (*See* doc. # 33 ¶ 2, Exh. 1).[4] The publisher agreement provides the terms and conditions governing the relationship between the publisher and LeadRev. (*See id.*).[5] The publisher agreement includes a choice-of-law and forum-selection provision:

> It is mutually understood and agreed that this Agreement shall be understood and interpreted in all respects according to the law of the State of Nevada. Furthermore, it is understood that this Agreement shall be treated as though it were executed in the County of Clark in the State of Nevada, and to have been performed in the County of Clark in the State of Nevada. The parties agree that any action relating to this Agreement shall be instituted and prosecuted in the Courts of Nevada County of Clark.

(*Id.* at ¶ 12.2). The publisher agreement also includes an arbitration provision for disputes arising out of the publisher agreement, which provides in relevant part that "arbitration[s] shall be held in Las Vegas, Nevada, or in a mutually convenient place, and the award shall be deemed to be made in Nevada." (*Id.* at ¶ 12.8(iii)).[6]

## II.   Personal Jurisdiction

LeadRev moves to dismiss pursuant to Rule 12(b)(6), arguing that it lacks sufficient contacts with Nevada for this court to exercise personal jurisdiction over it. A plaintiff has the burden of

---

[4] The court has before it only an unexecuted copy of the publisher agreement. The court assumes for purposes of its analysis that executed versions exist and could be obtained through discovery if granted.

[5] Plaintiff does not contend that she is party to a publisher agreement or that the terms of the publisher agreement apply to this matter.

[6] There is some tension between these provisions, as the publisher agreement requires actions related to the agreement be instituted in Nevada courts and also requires disputes arising from the agreement be arbitrated. (*Compare id.* at ¶ 12.2 and *id.* at ¶ 12.8(ii)).

**James C. Mahan**
**U.S. District Judge**

1 establishing that a court has personal jurisdiction over a defendant. *Unocal*, 248 F.3d at 922. When a motion to dismiss for lack of personal jurisdiction is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdiction to survive the motion. *Id.*

"When, as here, subject matter jurisdiction is premised on a federal question, the exercise of personal jurisdiction over a non-resident defendant must be authorized by a rule or statute and consonant with the constitutional principles of due process." *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1123 (9th Cir. 2002). The Telephone Consumer Protection Act contains no provision for personal jurisdiction, *see Creative Montessori Learning Ctr. v. Ashford Gear, LLC*, 2010 WL 3526691, *2 (N.D. Ill. Sept. 2, 2010), so the court turns to Nevada's long-arm statute as its starting point. *See Glencore*, 284 F.3d at 1123.

Nevada's long-arm statute authorizes the exercise of personal jurisdiction to the extent allowed by federal due process. *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002) (citing Nev. Rev. Stat. § 14.065 (2001)). As a result, the analysis before the court collapses into one: whether the exercise of personal jurisdiction comports with due process. *Glencore*, 284 F.3d at 1123.

Plaintiff argues that the requirements of due process are satisfied such that the court may exercise both general jurisdiction and specific jurisdiction over LeadRev. The court addresses each contention in turn.

**A.    General Jurisdiction**

Plaintiff argues first that this court may exercise general jurisdiction over LeadRev. "A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S.Ct. 2846, 2851(2011).

For general jurisdiction to exist, a defendant must engage in "continuous and systematic general business contacts," *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416

U.S. District Judge

- 4 -

(1984), that "approximate physical presence" in the forum. *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1074 (9th Cir. 2011). The standard for general jurisdiction "is an exacting standard, as it should be, because a finding of general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004).

Plaintiff has not satisfied the "exacting" standard necessary to establish general jurisdiction. As noted above, LeadRev has no offices or staff in Nevada; is not registered to do business in Nevada; has not employed agents in Nevada; and has not paid state taxes in Nevada.

In arguing that the court may still exercise general jurisdiction over LeadRev, plaintiff contends primarily that LeadRev's internet activities constitute continuous and systematic contacts with Nevada. In particular, plaintiff argues that LeadRev's website is "highly interactive" and that the website is hosted by a Nevada-based server. (*See* doc. # 32, 10). Neither argument is persuasive.

With respect to LeadRev's website, the Ninth Circuit has rejected the contention that a highly interactive website can constitute a basis for the exercise of general jurisdiction. *See, e.g.*, *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1226-27 (9th Cir. 2011) ("even a 'highly interactive website [] does not confer general jurisdiction"), *cert. denied*, 132 S.Ct. 1101 (2012). Similarly, courts within this circuit have rejected the contention that server location within the forum can constitute a basis for the exercise of personal jurisdiction. *See, e.g.*, *Man-D-Tec, Inc. v. Nylube Prods. Co.*, 2012 WL 1831521, *2 (D. Ariz. May 18, 2012) (citing *Chang v. Virgin Mobile*, 2009 WL 111570, *3 (N.D. Tex. Jan. 16, 2009)). As a result, LeadRev's website and its server location do not establish the continuous and systematic contacts required for this court to exercise personal jurisdiction over it.

Plaintiff also appears to argue that LeadRev has consented to personal jurisdiction in Nevada by entering into the publisher agreement because it includes an arbitration clause designating Nevada as a default location unless the parties choose another mutually agreeable location. (*See* doc. # 32, 5 ("LeadRev has voluntarily subjected itself to Nevada's jurisdiction in its own arbitration agreement with contractors"); *see also id.* at 9 (citing case law for the proposition that arbitration clause waives

right to object to personal jurisdiction)).

The court disagrees and finds that the arbitration clause does not provide a basis for exercising personal jurisdiction over LeadRev. Most importantly, plaintiff is not a party to the publisher agreement and she does not contend that it applies to her claim. A party's consent to jurisdiction in one case does not subject it to jurisdiction in another case. *See Dow Chemical Co. v. Calderon*, 422 F.3d 827, 833-34 (9th Cir. 2005). To that end, courts have specifically refused to construe an arbitration forum selection clause as consent to personal jurisdiction in any suit other than one arising directly from the agreement to arbitrate itself. *See, e.g.*, *Foster v. Device Partners Int'l LLC*, 2012 WL 6115618, *4-5 (N.D. Cal. Nov. 21, 2012) ("by and large, these courts have not demonstrated a willingness to find that agreements to arbitrate give rise to personal jurisdiction for purposes not directly related to the agreement to arbitrate"), *adopted*, 2012 WL 6479235 (N.D. Cal. Dec. 10, 2012).[7]

Here, plaintiff's claims here are unrelated to the publisher agreement and the court finds the arbitration clause therein an untenable basis for exercising personal jurisdiction over LeadRev.[8] Moreover, as pointed out by LeadRev, the arbitration clause at issue here provides that Nevada is the default location for arbitrations, but also allows for such arbitrations to be held in another "mutually convenient place."

Accordingly, taking the contacts identified by Plaintiff collectively, Plaintiff has failed to establish the continuous and systematic contacts required for this Court to exercise general jurisdiction over LeadRev.

---

[7] Plaintiff's reliance on *Fireman's Fund Insurance Company v. National Bank of Cooperatives*, 103 F.3d 888 (9th Cir. 1996) is misplaced. The defendant there had agreed to arbitrate a claim in California, had actually arbitrated it in California, had participated in related bankruptcy proceedings in California, and then moved to dismiss for lack of personal jurisdiction in a declaratory judgment action seeking a holding that the arbitration award was unenforceable. *Id.* at 893-95. Accordingly, the plaintiff's cause of action arose out of the defendant's contacts in California. *Id.*

[8] Although her discussion focuses on the arbitration clause, plaintiff also notes that the publisher agreement contains a forum selection clause for litigation arising out of that contract. (*See* doc. # 33, 2). For the same reasons discussed above with respect to the arbitration provision, the Court finds the litigation forum selection clause of no moment here. *See, e.g.*, *Radio Sys. Corp. v. Accession, Inc.*, 638 F.3d 785, 792-93 (Fed. Cir. 2011) ("Because this action did not arise out of the subject matter of the confidential disclosure agreement, the forum selection clause of that agreement has no effect on the question of personal jurisdiction.")

James C. Mahan
U.S. District Judge

- 6 -

**B.     Specific Jurisdiction**

Plaintiff argues alternatively that the court may exercise specific jurisdiction over LeadRev. The Ninth Circuit has established a three-prong test for analyzing an assertion of specific personal jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802. "The plaintiff bears the burden of satisfying the first two prongs of the test. If the plaintiff fails to satisfy either of these prongs, personal jurisdiction is not established in the forum state." *Id.* (internal citations omitted).

"The purposeful availment prong of the minimum contacts test requires a 'qualitative evaluation of the defendant's contact with the forum state,' in order to determine whether '[the defendant's] conduct and connection with the forum State are such that [the defendant] should reasonably anticipate being haled into court there.'" *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1130 (9th Cir. 2003) (internal quotations omitted).

Plaintiff asserts that purposeful availment exists based on the arbitration clause in the publisher agreement. (Doc. # 32, 7-8). In support of that position, plaintiff relies on the finding that purposeful availment had been established in *Fireman's Fund*, 103 F.3d at 894. (*Id.*). As discussed above, however, *Fireman's Fund* is readily distinguishable from the case at hand because it involved a declaratory judgment action arising directly out of arbitration proceedings held in the forum. *See, supra* II.A n.7. Moreover, the authority located by the court negates plaintiff's position. For example, the Fifth Circuit has rejected the contention that an arbitration clause in an agreement to which the plaintiff is not a party could establish purposeful availment with respect to the claims brought by the plaintiff. *See Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 345 (5th Cir. 2004). The Fifth Circuit reasoned that the defendant may have expected to arbitrate its disputes with the other contractual party in Texas, but "it does not concomitantly follow that [it] anticipated being haled into

1 a Texas Court to defend a lawsuit brought by [the plaintiff] or any other nonparty to the [agreement]
2 . . . . [T]he arbitration provision at issue does not impact our jurisdictional analysis." *Id.*

3     The court agrees with the Fifth Circuit's reasoning and finds that the arbitration clause in the
4 publisher agreement does not show that LeadRev anticipated being haled into Nevada court by a
5 non-party to that agreement. Plaintiff fails to articulate how any other identified contact establishes
6 purposeful availment and the court discerns no such basis. Accordingly, the court may not exercise
7 specific jurisdiction over LeadRev.

8     **C.**     **Jurisdictional Discovery**

9     Plaintiff also seeks leave to take jurisdictional discovery. "Discovery may be appropriately
10 granted where pertinent facts bearing on the question of jurisdiction are controverted or where a
11 more satisfactory showing of the facts is necessary." *Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th
12 Cir. 2008) (quoting *Data Disc, Inc. v. Systems Tech. Assoc.*, Inc., 557 F.2d 1280, 1285 n.1 (9th Cir.
13 1977)). "Where a plaintiff's claim of personal jurisdiction appears to be both attenuated and based
14 on bare allegations in the face of specific denials made by the defendants, the Court need not permit
15 even limited discovery." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1160 (9th Cir. 2006) (quoting
16 *Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 562 (9th Cir. 1995)).

17     To this end, plaintiff's seeking jurisdictional discovery must provide some basis to believe
18 that discovery will lead to relevant evidence providing a basis for the exercise of personal
19 jurisdiction and courts are within their discretion to deny requests based "on little more than a hunch
20 that [discovery] might yield jurisdictionally relevant facts." *Boschetto*, 539 F.3d at 1020.

21     The jurisdictional discovery requested by plaintiff is based on little more than a hunch. For
22 example, plaintiff states, "[o]n information and belief, . . . that the facts which will be uncovered
23 in discovery will show that LeadRev [has] continuous and systematic contacts with Nevada." (Doc.
24 # 32, 13). Such a contention is plainly insufficient to allow jurisdictional discovery. *See, e.g.,*
25 *Butcher's Union Local No. 498, United Food & Commercial Workers v. SDC Inv., Inc.*, 788 F.2d
26 535, 540 (9th Cir. 1986) (plaintiffs' statement that they "believe" discovery will enable them to
27 demonstrate personal jurisdiction insufficient to require jurisdictional discovery).

28

**James C. Mahan**
**U.S. District Judge**

- 8 -

Similarly, the specific topics of inquiry identified by plaintiff fare no better. For example, plaintiff requests discovery on LeadRev's relationship with its parent corporation, but has provided no evidence whatsoever of an alter ego or agency relationship through which the court might impute Selling Source's contacts to LeadRev. (*See* doc. # 32, 14-15). Although the Ninth Circuit has, at times, allowed discovery into the relationship between a parent and subsidiary, it has done so when there is some evidence before it that the corporate formalities have not been maintained. *See Harris Rutsky*, 328 F.3d at 1135 (finding jurisdictional discovery should have been allowed where companies were run by the same senior officers and directors, shared the same offices, shared some of the same staff, and there was some evidence of day-to-day control); *see also Martinez v. Manheim Cen. Cal.*, 2011 WL 1466684, at *5 (E.D. Cal. Apr. 18, 2011) (jurisdictional discovery on the parent-subsidiary relationship inappropriate absent at least "a minimal factual showing" of alter ego or agency relationship).

Plaintiff has provided no evidence that LeadRev is the alter ego and/or agent of Selling Source, and LeadRev provided a declaration with specific denials on that front. *See, e.g.*, doc. # 27, ¶ 5). Accordingly, plaintiff's request for jurisdictional discovery is denied.

### D.     Transfer to the Northern District of Florida

Where the court determines that it lacks jurisdiction over a matter, it must determine whether the case should be transferred to another district rather than dismissed pursuant to 28 U.S.C. § 1631. *See Miller v. Hambrick*, 905 F.2d 259, 262 (9th Cir. 1990); *see also Gray & Co. v. Firstenberg Mach. Co.*, 913 F.2d 758, 761-62 (9th Cir. 1990) (holding that district court lacked personal jurisdiction and remanding for determination of whether transfer is in the interest of justice pursuant to 28 U.S.C. § 1631).

Section 1631 provides that, if the court determines it is lacking jurisdiction in a civil case, "the court shall, if it is in the interest of justice, transfer such action . . . to any other such court in which the action . . . could have been brought at the time it was filed." This provision "serves to 'aid litigants who were confused about the proper forum for review.'" *Miller*, 905 F.2d at 262 (*quoting In re McCauley*, 814 F.2d 1350, 1352 (9th Cir. 1987)). The court finds transfer appropriate here.

**James C. Mahan**
**U.S. District Judge**

This case could have been filed in the Northern District of Florida as LeadRev resides there and Selling Source has consented to that court's jurisdiction. (*See* doc. # 27. ¶ 4 (LeadRev's only office is in Gulf Breeze, Florida); doc. # 26, 2 ("Selling Source consents to personal jurisdiction and venue in the Northern District of Florida for purposes of this lawsuit.").

The interest of justice is also served in transferring this case rather than dismissing it. Dismissing this action and requiring plaintiff to file a new action in Florida would waste both the parties' and the court's resources. "Normally transfer will be in the interest of justice because . . . dismissal of an action that could have been brought elsewhere is 'time-consuming and justice-defeating.'" *Miller*, 905 F.2d at 262 (*quoting Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 467 (1962)). Transfer here would lead to a more just, speedy, and inexpensive resolution for all parties.

**III.   Venue**

LeadRev alternatively moves to dismiss pursuant to Rule 12(b)(3), arguing that venue is not proper in this district. Because the Court lacks personal jurisdiction over LeadRev, it need not analyze whether venue is proper. Nonetheless, the court briefly discusses LeadRev's venue arguments as an alternative basis for transferring this case.

Once a defendant moves to dismiss, it is the plaintiff's burden to establish that venue is properly in this district. *Nat'l Fitness Co. v. Procore Labs., LLC*, 2011 WL 2463296, *1 (D. Nev. June 20, 2011) (*citing Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979)). The applicable statute provides that venue in a civil action is proper in:

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(b).

Plaintiff advances only one argument as to why venue is proper in this court; namely, that section 1391(b)(3) provides a basis for venue. But subparagraph 3 only applies when venue could not be proper in any district under subparagraphs 1 or 2.  *See* 28 U.S.C. § 1391(b)(3) (outlining venue requirement in instances where "there is no district in which the action may otherwise be

brought"); *see also Hoff v. I.R.S.*, 2007 WL 295611, *4 (D. Nev. Jan. 29, 2007) (because California provided proper venue, reliance on section 1391(b)(3) was unavailing).

Here, plaintiff makes no showing that venue cannot be proper in another district. The court finds that venue could be proper in the Northern District of Florida under subparagraph 1 because LeadRev resides in that district and Selling Source has consented to personal jurisdiction there. *See* 28 U.S.C. § 1391(c)(2) (a defendant "resides" in any jurisdiction in which they are subject to the court's personal jurisdiction). As venue in the Northern District of Florida is proper under subparagraph 1, plaintiff may not rely on the fallback provision of subparagraph 3.  Accordingly, plaintiff has failed to carry her burden of showing that venue is proper in this district.

Upon finding that venue is improper, the court may order the case transferred to a district in which venue is proper if doing so is "in the interest of justice." *See* 28 U.S.C. § 1406(a); *see also Pelaez v. MCT Group, Inc.*, 2011 WL 500215, *2 (D. Nev. Feb. 10, 2011). In making such a determination, the court looks to, *inter alia*, whether dismissing the case would force the plaintiff to incur additional fees and delay the case. *See, e.g., Rodriguez v. PepsiCo. Long Term Disability Plan*, 716 F. Supp. 2d 855, 862 (N.D. Cal. 2010).  For the reasons discussed above, *see supra*, II.D, the court finds that this case should be transferred to the Northern District of Florida.

**IV.   Conclusion**

Accordingly, the court finds that it lacks personal jurisdiction over LeadRev and that this district is not a proper venue for plaintiff's lawsuit.

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that defendant LeadRev Inc.'s motion to transfer or motion to dismiss (doc. # 26) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that in the interest of justice, that this case be transferred to the Northern District of Florida.

DATED March 20, 2013.

*James C. Mahan*
UNITED STATES DISTRICT JUDGE

**James C. Mahan**
**U.S. District Judge**